IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>LARRY WAYNE PRICE, JR.<br><br>Defendant. | CR 18-85-BLG-DLC<br>CR 18-149-BLG-DLC<br><br>FINDINGS AND<br>RECOMMENDATIONS |

On October 2, 2020, United States District Judge Dana L. Christensen imposed sentence and entered judgment against Defendant Larry Wayne Price, Jr. following his guilty plea to three counts of wire fraud in violation of 18 U.S.C. §1343, one count of conspiracy to commit money laundering in violation of 18 U.S.C. §1956(h), and one count of false statements in violation of 18 U.S.C. §1001(a)(2). (Doc. 91.) Prior to imposing sentence, Judge Christensen determined that the victims' losses in this case were not ascertainable at that time. (Doc. 89.) At sentencing, Judge Christensen deferred a final determination as to the amount of restitution that should be imposed. (Doc. 91 at 6.)

Judge Christensen referred this matter to the undersigned for the limited purpose of making findings of fact and recommendations on the issue of restitution. (Doc. 89.) The Court held an ancillary hearing on November 6, 2020 to

quantify restitution. The Court held the record in this case open until November 12,

2020 to allow the parties to supplement their briefing. Both parties supplemented

the record with additional briefing and exhibits. (Docs. 110, 113.) Pursuant to the

evidence and argument presented, restitution should be imposed against the

Defendant in the amount of $20,221,134.00.

## I.      Factual and Procedural Background

The following facts are based on the Presentence Investigation Report and

testimony presented at the restitution hearing. Larry Price formerly served as a

Vice President of Surface Activities at Signal Peak Energy — a Montana company

engaged in coal mining activities. Between October 2016 and April 2018, Price

embezzled funds from Ninety M, LLC, Three Blind Mice, LLC, and Signal Peak

Energy.

In 2016, Price convinced Three Blind Mice to lend him $7,500,000.00 for a

coal mining project. In exchange, Price told Three Blind Mice he would repay it

$11,000,000.00. Price did not repay Three Blind Mice and instead misappropriated

the $7,500,000.00.

In 2017, Price acted as a representative of Ninety M. In this role he

represented to Ninety M investors that he negotiated the sale of coal mining

equipment and property for the company. Price convinced Ninety M to transfer

him $8,525,000.00 to complete these transactions. Price misappropriated the funds.

In 2017 while still employed by Signal Peak, Price convinced Signal Peak to purchase coal mining equipment. Signal Peak transferred funds to Peters Equipment Company to purchase the equipment. Peters Equipment Company then transferred the money to Price. As a result, Price misappropriated $2,396,134.00 of Signal Peak's funds.

In 2018, Three Blind Mice and Ninety M discovered that Price stole their money and was unable to repay them. Three Blind Mice contacted Price for the purpose of arranging the transfer of real estate from Price to Three Blind Mice as repayment for Price's misappropriation of its money. Dr. Robert Schildt, on behalf of Three Blind Mice, met with Price to discuss the property transfer. Price provided Three Blind Mice with quit claim deeds to eight properties located in Montana and Virginia. Thereafter, on May 17, 2018, Randy Nelson, on behalf of Three Blind Mice, wrote the FBI stating "we do not want to participate [in the investigation against Price] in a victim position[.]" (Doc. 103-5.)

Once Price was indicted in the District of Montana, the Court entered a Preliminary Order of Forfeiture stating that Price's interest in various properties, including all eight pieces of property deeded to Three Blind Mice, is forfeited to the United States. (Doc. 60.) Thereafter, the United States, Three Blind Mice, and Ninety M entered a Stipulation to Deposit Escrow Funds and Restrict Transfer to Preserve Availability for Forfeiture and Restitution regarding the properties subject

to forfeiture. (Doc. 61-2.) The Stipulation included four of the properties Price had previously transferred to Three Blind Mice through quit claim deeds. The Stipulation provided that after satisfying various tax and construction liens, $1,700,000.00 of the proceeds would be held in a court account, and Three Blind Mice and Ninety M would divide any remaining proceeds. The Stipulation additionally stated that funds "received by TBM and Ninety M may be deemed to reduce the restitution that may be ordered for victims named in the indictment." (Doc. 61-2 at 4.) It appears these four properties have not yet been sold.[1]

The Presentence Investigation Report prepared in this case identifies requests for restitution from Signal Peak Energy, Ninety M, and the individual members of Three Blind Mice — Stephen Casher, Dr. Robert Schlidt, and Dr. Raoul Joubran. These entities and individuals sought restitution for the losses they suffered as a result of Price's embezzlement of their money. At the hearing, the parties agreed that $20,221,134.00 reflected the total loss by these victims excluding any deductions. However, Price argued the amount should be reduced by the value of the properties he transferred through quit claim deeds to Three Blind Mice. The testimony and evidence at the hearing focused almost exclusively on

---

[1] At the hearing the United States stated that Three Blind Mice and Ninety M were responsible for marketing and selling the properties. Randy Nelson also notified the Court that Three Blind Mice transferred Lot 4 of the Price Subdivision to Chandra Hanson, a member of Ninety M.

this issue. For the reasons explained below, the Court finds the actual loss amount of $20,221,134.00 should not be reduced at this time.

## II.   Discussion

### a.  Legal Standards

Under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. §§ 3663A-3664, restitution is mandatory for a conviction based on an offense against property committed by fraud or deceit. 18 U.S.C. § 366A(c)(1)(A)(ii). The Court must "order restitution to each victim in the full amount of each victim's losses as determined by the court[.]" 18 U.S.C. § 3664(f)(1)(A). "Any dispute as to the proper amount or type of restitution shall be resolved by the court by a preponderance of the evidence." 18 U.S.C. § 3664(e).

Restitution compensates victims for their actual losses caused by the defendant's conduct. A victim's "actual loss" "is determined by comparing what actually happened with what would have happened if the defendant had acted lawfully." *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010). The MVRA defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy or pattern." 18 U.S.C. §

3663A(a)(2).   Restitution is therefore "limited to the victim's actual losses that area direct and proximate result of the defendant's offense[.]" *United States v. Thomsen*, 830 F.3d 1049, 1065 (9th Cir. 2016). The United State must "show not only that a particular loss would not have occurred but for the conduct underlying the offense of conviction, but also that the causal nexus between the conduct and the loss is not too attenuated (either factually or temporally)." *United States v. Swor*, 728 F.3d 971, 974 (9th Cir. 2013).

The United States bears the burden of proving by a preponderance of the evidence that (1) a person or entity is a victim under the MVRA; (2) the amount of the victim's loss; and (3) the causal connection between the defendant's conduct and the victims' losses. *United States v. Waknine*, 543 F.3d 546, 556 (9th Cir. 2008); 18 U.S.C. § 3664(e). However, [t]he question of who bears the burden for establishing a right to statutory offset . . . is left to the court's determination of what 'justice requires.'"[2]  *United States v. Gagarin*, 950 F.3d 596, 608 (9th Cir. 2020) (quoting *United States v. Crawford*, 169 F.3d 590, 593 n.2 (9th Cir. 1999)). Once the total amount of restitution is determined, "the defendant is entitled to

---

[2]  *See* 18 U.S.C. § 3664(e) "The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government. The burden of demonstrating the financial resources of the defendant and the financial needs of the defendant's dependents, shall be on the defendant. The burden of demonstrating such other matters as the court deems appropriate *shall be upon the party designated by the court as justice requires.*"

have the amount of restitution reduced by any amount later recovered by the victim in any civil proceeding as compensatory damages for the same loss." *Crawford*, 169 F.3d at 593; 18 U.S.C. § 3664(j)(2).

Similarly, the Court should order the defendant to pay the value of property lost by the victim less "the value (as of the date the property is returned) of any part of the property that is returned." 18 U.S.C. § 3663A(b)(1)(B)(ii). *See also*, *U.S. v. Van Alstyne*, 584 F.3d 803, 819 (9th Cir. 2009) (accurate total loss amount required deduction of funds distributed to victims before indictment filed). The United States Supreme Court has interpreted the MVRA's "deduction provision" under circumstances where the defendant returned collateral to the victim rather than the exact property lost by the victim. Under that scenario, the Court determined that "a sentencing court must reduce the restitution amount by the amount of money the victim received in selling the collateral, not the value of the collateral when the victim received it." *Robers v. United States*, 134 S.Ct. 1854, 1856 (2014). This is the precise situation before presently before the Court.

First, the value of the properties Price deeded to Three Blind Mice are not "offsets" under the MVRA. The property transfers are not amounts "recovered by the victim[s] in any civil proceeding as compensatory damages for the same loss" that should offset the amount owed *after* the Court imposes restitution. 18 U.S.C. § 3664(j)(2). Rather, the values of the properties should be considered when

determining the amount of the victims' actual losses. Restated, the value of the

properties deeded to the victims by Price should be deducted *prior* to imposition of

the final restitution amount. 18 U.S.C. § 3663A(b)(1)(B)(ii).

Additionally, pursuant to *Robers*, any deduction to Price's restitution should

reflect the amount of money Three Blind Mice received from selling the properties,

not the value of the properties at the time Price deeded them to Three Blind Mice.

*Robers*, 134 S.Ct. at 1856. Finally, the burden remains on the government to

establish, by a preponderance of the evidence, that the victims suffered losses in

the amounts claimed. *United States v. Dokich*, 614 F.3d 314, 321 (7th Cir. 2010)

("[I]n the context of restitution awards, the government's evidence of actual loss

must deduct any financial benefit realized by victims of the fraud"). Price may

refute the government's loss amount by demonstrating that a deduction is

warranted, and the Court may "place the burden of establishing the right to a

deduction on the defendant." *Gagarin*, 950 F.3d at 608 (citing *Crawford*, 169 F.3d

at 593 n. 2). Accordingly, any imposition of restitution will be reduced against the

value realized by the victims.

### b.  Hearing Testimony

The parties agree that Signal Peak, Three Blind Mice, and Ninety M are

victims directly harmed by the conduct charged in this matter. In its sentencing

briefing and at the hearing, the government acknowledged that although there are

other individuals with claims against the Defendant, those individuals may not

receive restitution in this matter because their claims are unrelated to the offenses

charged.[3] (Doc. 88 at 4.) The Court agrees. However, for the sake of the record,

the Court will briefly discuss the testimony provided at the hearing by other

entities.

At the hearing, P&H Trucking and My Company asserted an interest in

receiving restitution imposed in this matter. However, P&H Trucking and My

Company conceded that they did not know whether they were entitled to restitution

stemming from the offense conduct. Furthermore, neither P&H Trucking and My

Company nor the United States on their behalf presented any evidence to suggest

that Price's conduct related to P&H Trucking and My Company was sufficiently

related to the offense conduct in this matter. Restitution must be "based on related .

. . conduct that is part of a fraud scheme[,]" and the "harm to the victim must . . .

be closely related to the scheme, rather than tangentially linked." *In re Her Majesty

the Queen in Right of Canada*, 785 F.3d 1273, 1276 (9th Cir. 2015) (citations

omitted). P&H Trucking and My Company did not present evidence establishing

that their losses derived from the criminal conduct charged, and the government

---

[3] Prior to the hearing, the Court received a letter requesting restitution from
Chandra Hanson. The letter is not part of the record and the government did not
identify Ms. Hanson, in her individual capacity, as a victim in this case.

did not attempt to establish P&H Trucking and My Company as victims in this case. *See* 18 U.S.C. § 3664(e) ("The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government.") Consequently, the Court concludes that it cannot impose restitution for the losses borne by P&H Trucking and My Company.

The Court also heard testimony from Kevin Nelson. Mr. Nelson is a contractor in Billings, Montana who completed work on Price's residence, colloquially called "the castle". Mr. Nelson stated that Price did not pay him or various other contractors for their work on the castle. The government addressed Mr. Nelson's concerns and explained that pursuant to the agreements it entered with Three Blind Mice and Ninety M, the proceeds of the sale of Price's property forfeited to the United States would be applied to general and local sub-contractors for work completed on the castle. Randy Nelson, on behalf of Three Blind Mice and Ninety M, vehemently agreed with the government's statement.

### c. Reduction to Total Loss

As noted above, Price asks the Court to reduce the victims' total loss amount to account for the property transfers he made to Three Blind Mice prior to being indicted. Price's request faces multiple impediments. Most problematic, however, is the lack of evidence demonstrating the real estate's property status and what proceeds, if any, have been distributed to the victims. The Court cannot reduce the

10

total loss amount when the proposed reductions cannot be ascertained.

The evidence Price provided to the Court reflecting the value of the properties he deeded to Three Blind Mice is insufficient. Price initially submitted a self-created spreadsheet listing each of the properties and their assessed values[4] without providing documents supporting the veracity of the cited property values. (Doc. 109 at 34.) Price then supplemented the record with a list of the properties he transferred to Three Blind Mice and an accompanying valuation of the properties based on real estate listings, and in some cases, tax assessment histories. (Doc. 113-1.) Price also provided a litany of exhibits including real estate listings, title company documents, several invoices, and property report cards. (Docs. 113-2, 3.) None of the documents establish whether Three Blind Mice has sold the properties or what value Three Blind Mice has received from selling the properties. At most, the documents show the amount of money Price invested into the development and purchase of the properties and provide an estimate of what the properties are worth. Such evidence is inadequate to "reduce the restitution amount by the amount of money the victim received in selling the [properties]." *Robers*, 134 S.Ct. at 1856.

As indicated, the status of the properties remains unclear. At the hearing,

---

[4] The spreadsheet values the five Montana properties at $12,339,234.00 and the three Virginia properties at $1,426,100.00.

Three Blind Mice represented that all three of the Virginia properties had been

sold[5] and Lot 4 in Price Subdivision, Billings, Montana was given to Chandra

Hanson. Randy Nelson, on behalf of Three Blind Mice, stated that the claimed

losses of Three Blind Mice and Ninety M should be modified due to the sale of the

Virginia properties. Mr. Nelson stated that the Virginia properties sold for a total

amount of $600,000.00, which was evenly divided by Three Blind Mice and

Ninety M. The government argues the $600,000.00 figure amounts only to an

estimate unsupported by a clear calculation of the net proceeds. (Doc. 110 at 4.)

The Court agrees with the government. The parties have not provided

evidence of the apparent Virginia property sales, or the transfer of Lot 4 to

Chandra Hanson. Mr. Nelson's unsubstantiated representation of the proceeds from

the Virginia sales is insufficient. As the entities responsible for selling and marking

the Virginia properties, Three Blind Mice and Ninety M must provide

documentation of the sale of the Virginia properties to the government so the

proceeds can be deducted from the restitution owed. Additionally, there was no

evidence submitted reflecting the value of the lot transferred to Ms. Hanson.

Absent evidence that Three Blind Mice or Ninety M received value from the

transfer of these properties, the Court cannot reduce the agreed upon restitution

---

[5] *See also* Doc. 76 (releasing 3533 Ferncliff Road, Pulaski, Virginia, from the
Order of Forfeiture).

figure. *See*, *United States of America v. Thompson*, 792 F.3d 273, 280 (2d Cir.

2015) (reduction to restitution amount proper where defendant returned portion of

stolen funds to victims, funds were deposited into restitution account, parties

agreed to the reduction, and the value of the returned funds was undisputed).

Additionally, according to the Montana Cadastral, it appears the property

located at 5875 Whisperingwoods Drive in Billings, Montana was sold in

December 2019.[6]  To date, the government, the victims, and the Defendant have

failed to notify the Court of the sale of this property. The parties have not provided

the Court with any documents showing the net proceeds from this sale. In fact, it is

unclear whether the property was sold by the government or by the victims. It is

also unknown whether the proceeds are in an account controlled by the

government or have been dispersed to the victims.

Further, although Price only deeded the eight properties to Three Blind

Mice, he requests their value be credited to the restitution he owes to both Ninety

M and Three Blind Mice. In support of his request, Price argues that he deeded the

properties to Three Blind Mice under the impression that the properties would

---

[6]  The Court takes judicial notice of the property information provided by the
Montana Cadastral. *Garcia v. Regional Trustee Serv. Corp.*, 669 Fed. Appx. 918
(9th Cir. 2016) (property records in the public record "are proper subjects of judicial
notice.") (citing *Ormsby v. First Am. Title Co. of Nev.*, 591 F.3d 1199, 1203 (9th
Cir. 2010)) (property records are "official public records").

absolve him of his debt to Three Blind Mice and Ninety M and protect him from criminal charges. Price's supposition is unsupported by the evidence. Each quitclaim deed grants title and interest in the property to Three Blind Mice, not Ninety M. (Doc. 103-2). Additionally, the correspondence between Price, Three Blind Mice, and Randy Nelson does not indicate the property transfer was intended to absolve Price of his debt to Ninety M. (Docs. 103-1,3,4,5). Although three of the members of Ninety M are also members of Three Blind Mice, none of the other Ninety M members appear to have been involved in the planning or execution of the property transfers.

Finally, all eight properties are subject to forfeiture by the United States. (Doc. 60.) The proceeds from any of the properties subject to forfeiture that are sold should be placed into an account managed by the United States to be allocated to the victims in this matter. Additionally, four of the forfeited properties are subject to a stipulation entered by Three Blind Mice, Ninety M, and the United States. The proceeds of the sale of those four properties will be dispersed in accordance with the stipulation. Each time a property is sold, and the proceeds are allocated to the victims, the restitution owed to each victim should be reduced accordingly.

The United States' Financial Litigation Unit is responsible for distributing the proceeds of the forfeited property sales to the victims. As the victims obtain

money from the property sales, the Financial Litigation Unit accounts for that money and files a credit with the Court so the payment is credited against restitution. The Financial Litigation Unit also ensures victims do not receive double payment. Because the properties are subject to the forfeiture process, and no evidence has been submitted establishing the sale and proceeds of any of the properties, the Court cannot find that the victims have realized value from the properties. Beyond the documentary evidence of the deeds, Price has not shown that Three Blind Mice and Ninety M actually received a financial gain from the properties. *See United States v. Elson*, 577 F.3d 713, 734 (6th Cir. 2009) (abrogated on other grounds) (defendant not entitled to reduction in restitution where evidence of double recovery is not established).

Based on the lack of evidence supporting a reduction in the victims' actual loss, the Court declines to reduce the total loss amount. *See Waknine*, 543 F.3d at 556 (preponderance of the evidence requires evidence that possesses "sufficient indicia of reliability to support its probable accuracy.") and *U.S. v. Doe*, 488 F.3d 1154, 1160 (9th Cir. 2007) (the Court must be "able to estimate, based upon facts in the record, the amount of the victim's loss with some reasonable certainty.").

Although the evidence before the Court does not adequately support a reduction in restitution at this time, the Court recognizes that the government's authority to enforce the imposed restitution will result in credits against the

restitution owed. It is incumbent upon the U.S. Attorney's Office to collect monies and allocate payments in accordance with the restitution order. *See*, 18 U.S.C. § 3612. The U.S. Attorney's Office may employ discovery tools to enforce the collection of restitution and accurately determine amounts owed to victims. *See*, 28 U.S.C. § 3015(a). These discovery tools allow the U.S. Attorney's Office to obtain information from victims to determine whether the victims have received funds that should be appropriately credited against restitution. Fed. R. Civ. P. 69. As the entities responsible for marketing and selling some of the properties, Three Blind Mice and Ninety M should provide all supporting documents of any sales to the government to determine the proper credit against restitution.

Accordingly,

IT IS HEREBY RECOMMENDED that the Court order Price to pay $20,221,134.00 in total restitution. The amount should be apportioned as follows:

    (1)    Price shall pay Signal Peak Energy $2,396,134.00 in restitution;

    (2)    Price shall pay the members of Three Blind Mice, LLC $7,500,000.00 in restitution, apportioned as follows: Stephen Casher is owed $1,250,000.00; Dr. Robert Schlidt is owed $1,250,000.00; and Dr. Raoul Joubran is owed $5,000,000.00; and

    (3)    Price shall pay Ninety M, LLC $10,325,000.00 in restitution.

IT IS FURTHER RECOMMENDED that Three Blind Mice, LLC and

Ninety M, LLC shall report to the U.S. Attorney's Office all net proceeds received

by the sale of the real property subject to forfeiture in this matter. The net proceeds

reported shall be supported by documentation of the property sales. The U.S.

Attorney's Office shall reduce the restitution owed in accordance with the net

proceeds obtained by Three Blind Mice, LLC and Ninety M, LLC through the sale

of the real property.

IT IS ORDERED that, pursuant to 28 U.S.C. § 636, any objections to these

findings must be filed with the Clerk of Court and copies served on opposing

counsel on or before November 25, 2020. *See United States v. Barney*, 568 F.2d

134, 136 (9th Cir. 1978) (the court need not give the parties the full statutory period

set forth in 28 U.S.C. § 636(b)(1) within which to file objections).

DATED this 18th day of November, 2020.

_____
Kathleen L. DeSoto
United States Magistrate Judge